Good morning. May it please the Court, Christopher Strawn of the Northwest Immigrant Rights Project for Mr. Doissaint. In both of Mr. Doissaint's petitions for review, the Board repeatedly failed to address arguments that he raised, and when he did, applied the law incorrectly. I want to address the first petition for review first. On direct appeal, when the Board failed to address Mr. Doissaint's CAT claim and the IJ's adverse credibility determination, incorrectly put findings that they had both been abandoned. The Government does not defend the BIA's decision or even brief the first petition for review. Lopez requires remand when the Board fails to address a CAT claim, and on that ground, the first petition for review should be granted. On the second petition for review, the Government again does not defend and does not brief the BIA's incorrect statutory determination that Mr. Doissaint is ineligible for adjustment of status with a 209C waiver. Now here, there's no dispute now that the immigration judge failed to advise Mr. Doissaint of his eligibility for this form of relief, and again, the Government does not brief the fact that the Board applied the wrong law in denying him this opportunity. Rather, the Board makes the Government makes two arguments to this Court. First, that the Board made a discretionary denial, and this discretionary denial is sufficient. And second, that Mr. Doissaint doesn't have a due process right to a full and fair hearing. Both of these arguments are without merit. On the first argument, the discretionary denial is clearly a glare on two grounds. First of all, the sum total of the Board's decision in a footnote is Mr. Doissaint has a serious criminal history we deny in our discretion. There's not even a mention of what legal standard the Board is applying in denying him discretionary relief. Let me ask you a question about the relationship between the first and the second petitions in the following respect. Let's assume that we agree with you on the first petition, that is, the BIA failed to look at his claims instead of saying, well, he didn't make them. And if we were to grant and remand on that petition, wouldn't the second appeal go away until because it's a motion to reopen? The motion to reopen raises new arguments, new facts. And so the 209C waiver is a separate issue. So it could not be raised on remand? I guess that's sort of my procedural question. Would that be open as well? I guess the government can give me its answer on that as well. I think the motion to reopen and the motion to remand puts you in precisely the same position that we're in right now, which is whether or not the Board is going to allow Mr. DeSantis a hearing for an immigration judge on the 209C waiver as well as on his new cat claim on the basis of torture as a deportee. So all that does, I think, is place it again in front of the Board for a new decision. If I were to file a motion to remand, I think this Court should reach the issue. It's a clear legal issue, and the Board should be directed to address it. I'm not aware of any case law that necessarily requires us to refile another motion. So it just doesn't go away, is what you're saying? That's correct, Judge. Counsel, may I ask you, did the Board decide the cat issue on the motion to reopen or address it? So the Board did address the cat issue in part. The Board didn't. The Board failed to address Mr. Gosant's argument that he would be tortured by prison guards in Haiti. Rather, the sum, the way that I read the Board's decision, the sum total of its decision on that first cat claim in the motion to reopen is that Mr. Gosant would be, offers no evidence that he would be treated any differently than any other criminal deportee. However, that doesn't answer the question. If all criminal deportees are tortured, then he states a torture convention claim. Setting aside your disagreement with the extent to which the Board resolved the issues, procedurally, was it procedurally proper for the Board to address the cat claim in the motion to reopen? Only the second cat claim. The Board did not. The cat claim that the Board. I was due as torture on it. The cat claim that the Board had originally deemed was abandoned. That's right. And was it procedurally proper for the Board to address that cat claim in the motion to reopen? Well, the Board didn't address it in the motion to reopen, first of all. Oh, so you think that cat claim was not addressed in the motion to reopen? No, it wasn't. The only issue that was addressed in the motion to reopen is whether or not, well, let me back up from that a little bit. The issue that was addressed in the motion to reopen was whether or not new evidence corroborating his gunshot wound should be admitted and considered. There was nothing talking about the cat. Well, and what the Board said was that that was not material new evidence and that even if they did remand it, that they didn't disagree with the immigration judge finding a fact. So it does, the Board in a footnote does reference that first cat decision. However, the Board does not uphold the adverse credibility determination of the immigration judge. Well, they can't. It doesn't have jurisdiction to at that time. Exactly. Or in that form. And that's exactly our point. There's no way to bootstrap a review of the immigration judge's adverse credibility determination on a motion to reopen. Mr. Glissant has failed. That's the question I was asking whether or not it was procedurally proper. So it isn't. I think that's clear and we briefed that. So that's why remand on the first petition for review is necessary so that Mr. Glissant can get a full review of his first cat claim and the adverse credibility determination of the immigration judge. Now, what case says that the Board on a motion to reopen cannot address an issue that was not addressed by the Board originally? We cite a number of those. Franco-Rosendo. What's your very best case for that proposition? Probably the clearest one is one that was issued after briefing this matter was completed, which is Tofigi 510F31059. Would you provide that citation? I will. What's the best case for the proposition that you listed in your brief? I think Franco-Rosendo, that characterizing a motion to reopen as a thinly disguised attempt to re-litigate the merits. Basin also addresses this issue in a footnote as well. We have actually quite a few cases, I think, where we berate petitioners for trying to do what the government basically was doing here, which is to litigate the merits of the underlying matter in the motion to reopen context. Exactly. Most of them are probably memorandum dispositions saying you can't do that. Exactly. I think this issue is really quite clear. Moreover, it's waived by the government when they don't address the first petition for review in their brief. On the 209C waiver, the government does raise two arguments, just to get back to that issue. Not only do they not state what standard they're applying in denying discretionary relief, they also don't even mention, much less weigh, any of the positive equities. Now, this Court in Asinor said it's legal error for the Board to apply the wrong legal standard. If they don't even say what standard they're applying, that legal error is even clearer. Same with weighing of discretionary factors. This Board – this Court in Arosol said it's error to simply mention positive equities and dismiss them without consideration. Here, the Board didn't even mention the positive equities. It only mentioned, only considered the negative equities. Clear legal error. Because the Board committed clear legal error on its consideration of the 209C waiver, I don't think this Court needs to get to the second constitutional issue of whether or not Mr. Glissant has a due process right to a full and fair hearing. However, should this Court decide to consider that issue, once again, this Court's case-wise is extremely clear that applicants, even though the ultimate relief that they're applying for is discretionary, for example, adjustment of status, cancellation, suspension, asylum, even though those might ultimately be discretionary decisions, nonetheless, an applicant has a due process right to a full and fair hearing in those procedures. But let me ask you again. You've already answered this question for me, but it's still bothering me. And that is, if we were to agree with you on Petition No. 1 and send the case back, were those wrong? Are they distinguishable? Do we have conflicting authority? Well, as long as Mr. Glissant's right to raise these issues is still preserved by filing a motion to remand, then I don't think we have a right to do that. And I don't think that he would have any objection, that we would have any objection to being able to resubmit those arguments for consideration by the Board. Well, here are the government's position on the procedure. That said, I think that it probably is important to clarify the law on readjustment of status with the 209C waiver. The Board got it wrong the first time. So your point is you could have filed two separate petitions, actually, and if they didn't, you know, for the denial of the first one and then the motion to reopen. And we did. And they necessarily --. I should let you finish. Never mind. I was trying to help you out. I should definitely not do that. Now, on the second petition for review, the issue of the new Convention Against Torture claim based on evidence that Mr. Glissant was unable to discover as a pro se detainee without financial resources. I think it's important to note that the government on page 20 of their briefs acknowledges that the Board did not acknowledge or did not acknowledge the argument that Mr. Glissant as a pro se detainee did not know and was unable to discover that he would be tortured as a criminal deportee. The Board did not clearly reach this issue, did not acknowledge that argument. That is ground for remand. And I'd say that this case is consistent with Goal. It's the argument the government makes in that Goal specifically carved out the situation we're looking at here, which is, I'm quoting, Goal was not in custody while awaiting his removal hearing and was thus free to gather evidence in support of his application for relief. Goal recognizes that detainees are not free to go out and gather evidence. The situation is even more difficult for somebody who's pro se. They don't have an attorney outside who can get this evidence for them. So because of that, evidence was not available in the detention center. Mr. Glissant attempted to the best of his ability to pro se litigate his claim. It was only once he had an attorney with evidence that could be, who was able to get evidence from outside the detention center that we could raise this claim. So the argument is that this evidence is not only clearly material, but it was also unavailable. The other point I'd like to make on this is that the record in this case is distinct from matter of J.E. And this Court's endorsement of J.E., let's say, in Theogene. In Theogene and J.E., and the record in J.E. is explained in more detail, the applicant was only detained for a matter of weeks. This record specifies that Mr. Glissant is at risk of being detained for months or a year and that he won't be allowed to have a lawyer, he won't be brought before a judge, contrary to Haitian law. J.E. said, no evidence of intentional mistreatment. Conditions are merely a result of budgetary constraints. Here, however, the evidence is that guards specifically treat criminal deportees worse than your regular detainees and physically abuse them. And that we're not talking about mere budgetary problems, but we're talking about deprivation of food and water for months. The record says that Mr. Glissant is going to be lucky to get half a glass of The record says he will become ill, and it's likely he will be seriously ill and may die due to lack of medical care, immune suppression, while he is in the detention center. And also in a matter of J.E., the issue of torture on release from detention by public and police officers was not at issue. Here, the evidence is that the government has demonized criminal deportees among the population. It's a specific program that they have been implementing to scapegoat them for the problems of crime in Haiti. Again, not the record in J.E. Judge, I'd like to reserve the remaining two minutes I have for rebuttal. All right. You may do that. I don't see any pending questions. And we'll hear now from the government. Good morning, Your Honors. May it please the Court. My name is Dietz Lafour. I'm appearing on behalf of the Attorney General from the Office of Immigration and Litigation. The key issue in this case before us is whether or not detaining criminal deportees is torture. The law clearly establishes that it's not. That's not anywhere near the issue that I want to start with. With respect to the first petition, the BIA did not deal with two issues that were raised and mistakenly said that they had been abandoned. Do you agree with that statement so far? No, Your Honor. So you think that the BIA dealt with those two issues? Yes, ma'am. Yes, Your Honor. I believe they did. Where did they do so? You're correct on the first point. Let me explain. Which first point? The CAD claim, Your Honor. Yes, Your Honor. Okay. The CAD claim was correctly set forth. It was correctly raised before the Board in the first instance. And you're correct that the Board should have made a determination on that in its May decision. Okay. So having not done so, isn't a remand required? No, Your Honor, because the Board cured its error by addressing the merits of the CAD claim in its October decision. How could it possibly do that when it never did it the first time? I mean, it seems to me that the whole premise of requiring someone to have a very high burden on a motion to reopen is the presumption that the first decision was correct and regular in all respects. That's why it's such a high bar to get a motion to reopen. And here there had been no decision. I just really don't understand your argument. Well, if this panel decides to remand the case back to the Board to consider the CAD claim when, in effect, you're asking the Board to consider an issue which it has already considered and issued a determination on, the Board in its October decision. You're referring to the motion to reopen or what? Yes, Your Honor. And it's in the Board's October decision. The Board did consider Mr. Doisant's CAD claims on the merits and denied it. That's why I was asking opposing counsel about whether or not it was procedurally proper for the Board to have done that. Now, in your view, what statute or regulation authorizes the Board to resolve an issue in a motion to reopen that was not resolved in the petition for review or the appeal? I'm not aware of a specific statute that's right on point. However, once again, if this Court were to remand it for consideration, you would be asking the Board to consider the merits of Mr. Doisant's CAD claim which it had already done so in the October decision. Well, you know, it's really tough to ask the way this seems to have worked out to me because the first time the Board says in its footnote that the respondent does not contest the denial of protection under the Convention Against Torture. And then you come to the motion to reopen, and it says at page 3, in order for this Board to reopen the matter, respondent must first establish that the evidence he now seeks to submit was previously unavailable and could not have been formally discovered or presented at the earlier hearing. So that's the legal issue in the motion to reopen. It's a completely different legal issue than starting at the beginning because they're only looking at the new evidence. They're not looking back at what was done originally. They never did that first analysis without the presumption that their nonexistent analysis was correct. Your Honor, on the surface, I understand the Court's point. However, throughout the analysis of the October decision, the Board did consider the merits of the claim. So once again, if we sent it, if the Court elected to remand this case, you're asking the Board to consider an issue that it has already considered and rendered a decision on. Well, that's, I guess, open to interpretation as to whether it's actually considered the correct issue, which wasn't before it the second time. After a full and fair hearing from Mr. Doysante before an asylum officer, before an immigration judge, and twice before the Board and before this Court here today, Mr. Doysante received the full measure of due process. And the record demonstrates that the Board did not abuse its discretion in this case, and it did act properly. Counsel, what's your response to opposing counsel's position that you've waived this argument? With respect to? With respect to the fact that the Board considered the Catt claim and Evers' credibility termination in the motion to reopen. He said that you waived that argument. I respectfully disagree with opposing counsel on that. The evidence in the record demonstrates to the contrary. I understood his argument slightly differently, so I'm going to ask you the way I understood it just to be sure that we're all on track. In your brief, you did not defend the initial Board decision as having been complete. You never asserted that it was other than legal error for it to claim that the issue was abandoned when it wasn't. And that point was not contested in the red brief. Is that true? I agree, Your Honor. Mr. Doysante did assert his Catt claim. He did raise it before the Board in the first instance. And so there was a legal error when the Board said he abandoned it. Yes, Your Honor. The Board should have considered it in its May decision. However, in recognizing its error, it cured that error in its October decision. Where in the October decision does it recognize the error as distinct from analyzing the motion? Before we get there, I mean, I thought I heard opposing counsel say that you waived the argument regarding the error being cured. I disagree with that. I don't see any evidence in the record that can compel that conclusion. But to answer your question, Judge Graber, I'm looking at, in the first instance, footnote 2 on page 2, that's page 3 of the administrative record. Consequently, and I'm quoting here in this footnote. Which footnote 2? I'm sorry, footnote 1 on page 2 of the October decision. That would be page 3 of the record. Very last sentence. Consequently, we will also deny the Respondent's motion because we did not find that he would merit such relief in the exercise of discretion. Except what that is not a statement that they recognize that they made a mistake in an earlier order. That's what I was asking you before. You said in argument, I thought, that they recognized that they had left something out of their initial decision and they went back and redid it. I did not see any recognition that they had made a legal error in the previous decision. And I keep coming back to this because I haven't ‑‑ maybe I don't understand it or maybe we aren't communicating. But if you have an initial decision that contains a serious legal error, then it seems everything else has built upon that error in this case. And I don't see how you can then go back and undo it after the fact without actually going back. Judge Graber, in a motion to reopen, there's three elements that the Court can consider as to whether to grant or deny it. One of the elements is Mr. Doysant establishing a prima facie case. That would go directly, tie into directly into his CAD claim. That provides the conduit for the Board to cure its error in its October decision. Well, it might if they talked about it in those terms. But I don't see any recognition that they knew they messed up. I'm looking at footnote four, Judge Graber, on page four of the same October decision. And I'm quoting here, we find no clear error in the immigration judge's finding of fact. Was that properly before the Board on a motion to reopen, the merits of the original decision? Yes, Your Honor. And because of the three elements that the Court is required to consider whether granting or denying a motion to reopen. And one of those elements is it places the burden on the petitioner to establish a prima facie case. In this case, his CAD claim, which is narrowly construed to deferral of removal in this particular instance. So, yes, in the October decision, by considering Mr. Doysant's motion to reopen, and the Board's analysis of that motion, it had the opportunity to consider the merits of, and properly did so consider the merits of Mr. Doysant's CAD claim. So have we been misleading petitioners when we have cases that say that they can't relitigate the merits of the underlying decision in a motion to reopen? Because that happens all the time where a petitioner comes up here in a motion to reopen, and they don't argue that the information is new. They go back and argue about the immigration judge's finding of fact, and we say, no, you can't do that. Are we wrong? And if we're not wrong, why is this okay? The Court is not wrong to answer your question, Judge. But this is distinguishable in the facts of this case. Litigating from the movement standpoint is distinguishable from the Board considering the merits of the claim. Whether or not a movement can actually litigate the merits of a claim is distinguishable from the fact that the Board is not precluded from considering the merits of Mr. Doysant's CAD claim in this instance. Now, I'd like to also bring to the Court's attention that denying the actual claim itself can be denied on two alternatives, one on the merits, two on an adverse credibility determination, either which is a valid basis of denial. So notwithstanding the merits issue before us today, the IJ, the immigration judge in this case, determination as a valid basis for denying the claims before it. The Board adopted the immigration judge's finding, and there's no evidence in the record that would compel a conclusion to the contrary. Well, was Mr. Doysant's counsel given the opportunity to challenge those findings that were made upon the motion to reopen? Yes, Your Honor. It's the government's contention that Mr. Doysant, after a full and fair hearing before the asylum officer, the IJ, twice before the Board and before this Court today, that he did receive the full measure of due process. Mr. Doysant was represented by counsel before the Board. That really isn't my question. I think you've conceded that the BIA erred in saying that the CAD claim had been abandoned. Is that true? In its May decision? Yes. Yes, Your Honor. All right. The remedy for that should have been to remand it to make under Ventura findings a fact. Isn't that true? Well, the remedy, the actual error was remedied. It was remedied in the Board's October decision. It did consider the merits of its claim. Now, once again, keeping in mind that there are these two alternative bases for denying the underlying claim, we're just focusing here on the merits of the claim. We haven't even looked into the alternative, which is an adverse credibility determination. If the IJ determines that Mr. Doysant is simply not credible, the Board reviews and affirms that decision. We still have a valid basis of denying the claim, notwithstanding the merits of it. Once he's found untrustworthy, he's found untrustworthy. Has he ever had a hearing on his what I'll call second CAD claim regarding the treatment of criminal deportees? Has he ever had a hearing on that? In the course and scope of this, that is the only issue. And he conceded. He conceded in his brief that the only remedy from relief that he's eligible for is deferral. He concedes that he's Let me stop. That's not my question. Has he ever had a hearing in front of an immigration judge concerning the second basis for CAT relief, the treatment of criminal deportees in Haiti? That's a yes or no. He either has or has not had an opportunity to present that evidence at a hearing before an immigration judge. It's the government's contention that he has had the opportunity before the immigration judge and that he did receive the full measure of due process with respect to that So you're saying he could have raised that in his first hearing, but he didn't? Is that your position? No, Your Honor. The government's position is that in the course and scope of his claims of relief, he did present that before the immigration judge, if I understand you correctly. Okay. Well, I'm not sure we're communicating, but I think I understand your answer, that he has had a chance to present that theory. And I'm wondering why on that theory his credibility matters, because there's documentary evidence of the treatment of people, and you know he's in that category because he's about to be deported and he's criminal. So why would a credibility determination have any bearing on that alternative claim? Your Honor, see, I'm running short on time. May I briefly answer the question and conclude? Yes, thank you. That's a very general one. That's not a question, so you're not done yet. Yes, Your Honor. That's a very – Mr. Doissant's proposition in that respect is very broad and conjectural. My question is not broad. It's very focused. So if you would answer it, I'd appreciate it. Yes, Your Honor. The key issue is whether or not his detainment in Haiti by the government would be a detainment with intent to torture Mr. Doissant. And the answer to your question is he has not demonstrated that he will – that there's evidence in the record compelling the conclusion that the Haitian government has the specific intent to torture him. That wasn't my question. You said that an adverse credibility finding is sufficient to deny his cat claim. And my question to you was, and I'll try to make it more clear this time, with respect to that portion of his claim, why is his credibility even relevant when we know for a fact that he's going to be deported? That's the whole point of this proceeding. We know for a fact that he's been convicted of a serious crime because that's not contested. And he's going to Haiti. So we know those three predicate facts. And then there's documentary evidence about what will happen. My question specifically is what difference does it make whether he individually is a believable person or not when his believability has nothing to do with the determination as to the sufficiency of those documents to prove the fact? Your Honor, his credibility goes to the heart of his torture claim. Just to have a general proposition out there that all detainees in Haiti are tortured, we have jurisprudence that says to the contrary. In Mr. Doisan's case. Well, if it were true, then he'd be entitled to relief, right? If everybody returning to Haiti were actually tortured, strung up from a pole and beaten every day, then it wouldn't matter whether those people are believable or not. There would be torture in their future. In Mr. Doisan's case, it does matter. He bears the burden of proving that the Haitian government will, in fact, torture him upon being removed to Haiti. And the evidence in the record does not compel that conclusion. Let me ask you one final, for me, final question anyway, and that is to go back to the question that I asked opposing counsel. And I know you don't agree with the premise, but just assume with me that we would believe that the first petition should be granted and remanded because the BIA did not deal properly with the issues before it. Assuming that to be the case, what is your view on what should or can happen to the second petition for review that's here, the one about the motion to reopen? Would it be moot? Would it be still issues that we should decide? Is there another procedure that petitioners should use? Or will the government agree that those issues can be swept up in the remand? Well, to go back to your first point on the motion to remand, it is the government's position that although there was an error created in the maid decision, that error was cured. I understand that. I know you don't concede that. But please go with me where I'm asking you to go. Yes, Your Honor. Assume that we disagree with you on that and that we grant the petition of the petitioner on the first appeal. What happens to the second appeal of the motion to reopen? What does, can, or should happen to it? It's the government's position that Mr. Dorsant failed to establish any evidence in the record that would compel the conclusion that he's seeking in his motion. Number one, that the evidence presented in support was new and unavailable. The government disagrees with that. So you're not answering me directly, but can I take from your answer that you agree with opposing counsel that we ought to go ahead and decide the merits of both of the cases that are here? Yes, Your Honor. Okay. It's the government's position on the motion that Mr. Dorsant bears the burden of proving the veracity of his motion since he's the movement, and he has not set forth any new or new evidence that was unavailable at the time of his removal hearing. The evidence of the medical examination regarding the gunshot wound was available. It was not unavailable at the time of the removal hearing because it deals with an event that happened prior to the actual removal hearing. Regarding his August 2006 report regarding the Haitian government's policy of detaining criminal deportees, that doesn't establish anything new. It just mainly basically states that the current administration in Haiti is carrying on a policy of prior administrations. I have a question. Regarding the motion to reopen, would you agree that the BIA applied the wrong statute in determining whether or not the petitioner merited relief under 209C? No, Your Honor. 209C is the correct statute. But didn't it talk about 209A in determining whether or not relief was available as opposed to 209B? Well, for waivability concerns, 209C is the applicable statute under consideration that the board did consider. But you have to determine which category the petitioner falls in first, don't you? If you're referring to subsection A, that element deals with statutory ineligibility due to having already received LPR status. Right. It says, okay, on page 2 of the record, it says, initially we shall consider whether the respondent is eligible to seek adjustment of status or a section 209C waiver. Then it references 209A1 of the act, which is a refugee, right? Correct. Was the petitioner a refugee? No, I don't think that's an issue before the court, because regardless, due to his criminal activity, we're before the court today because he was twice convicted of assault, in the second sense, as an aggravated felon. And because of that conviction, the government commenced removal proceedings, which Mr. Doysant is now attempting to avoid in light of his torture claims. Wait. It says, we find that the respondent is precluded from adjusting his status pursuant to section 209A1 of the act. So if they relied on the wrong section, you're saying it doesn't matter? The board did not rely on the wrong section. The board directly addressed 209C. And regardless, Mr. Doysant is required to obtain 209C waivability in order to apply for adjustment of status. But it's important to note that the petitioner in this case conceded that he was inadmissible because of his criminal conduct, which is why we're here today, because of that. Yes, go ahead. After listening to all this, I am more confused. Did the board err in denying the motion to reopen, or did the court err by not granting the motion and then ruling on the merits? The board did not err in both of those circumstances. Your argument is that it was proper to deny the motion to reopen, but go ahead and determine the issue was whether he was entitled to relief. There's nothing precluding the board from considering the entire record before it, which would include the merits of the Catt claim. Wouldn't granting a motion to reopen present that issue to the board? No, Your Honor. In the course and scope of deciding on the motion in and of itself, the board did consider the merits. In the course and scope of arriving at its denial, the board acted properly and there's no evidence in the record that it abused its discretion in this respect. In analyzing the movement's claim here, the board is free to consider the entire record as a whole, which would include the merits of Mr. Doysan's Catt claim, which it properly did in its October decision when in the course and scope of arriving at the denial of the motion. So to answer your question, the board did act properly and did not abuse its discretion. Thank you, counsel. Let's see if no one has any further questions. Thank you, Your Honor. They've grilled me long enough. And, Mr. Strong, you have some rebuttal time remaining. Your Honors, I think we can dispose of the first petition for review very simply. The government concedes that the legal issue of whether or not Mr. Doysan abandoned his Catt claim was simply decided wrong by the board. That's legal error. Grant the first petition for review. The government's argument is that the second petition for review, you know, effectively upholds both the adverse credibility determination and the Catt claim. Okay. Deny the second petition for review. Two separate issues. Now, in fact, Mr. Doysan did not have an opportunity to challenge the IJ's adverse credibility determination. The board held that was waived. On the motion to reopen, he only argues new facts. Again, did not have any notice or an opportunity and did not brief the adverse credibility determination because that was not at issue. So the government here is asking you to deny him any possibility of briefing on the adverse credibility determination. I think this Court's case was. I'm not sure that's entirely right because in the first time around, his first appeal, the IJ had already made the adverse credibility finding, correct? That's correct. And so in theory, at least, he could have assailed that and said, I am a credible person. He was totally wrong. And he did on appeal to the board. And the board, the first time around, did not disturb that finding. The board said that they were not going to investigate that finding because the Catt claim had been waived and credibility only came down on the Catt claim. Okay. Because asylum and withholding were denied on statutory grounds. Mr. Kwasant has never gotten a review and an opportunity to brief and have considered his briefing on adverse credibility. It's a clear grounds for remand. And we made serious arguments, if you check our briefing to the board, where we had a chance to raise this issue, we made serious arguments that the IJ's adverse credibility determination was in error. Moreover, the single footnote where the board briefly addresses the first decision alternative grounds for not accepting this new evidence, the board doesn't say we're making adverse credibility determination. It doesn't say explicitly we uphold the IJ's adverse credibility determination. It just says we don't find enough credible evidence that he would be granted really funded convention against torture. I'd like to briefly address your suggestion that by resolving, which I think the clear first petition for review, maybe the second motion to reopen can be remanded back to the board. I'm thinking about that. I think that an order from this court granting the first petition for review on direct appeal could also direct the Board of Immigration Appeals to consider the motion to reopen as a motion to remand. Most of the relief we're asking for on the motion to reopen, on the petition for review of the motion to reopen, is remanding back to the board anyway. And we've identified a number of different places. It does seem to me that both the petitioner and the government would be best served by having everything unwound and start at the beginning. I mean, the government doesn't agree with this. But in terms of just ultimately resolving everything in a clear way, if it's all wrapped up in the same proceeding, there's less chance for more procedural problems. Our complaint is both that the board applied, as we briefed, the wrong law on the motion to reopen, and also failed to consider several of Mr. Glissant's arguments. The board can clearly address that if the motion to reopen is considered a motion to remand. What wrong law do you think was applied? Well, first of all, on the 209C waiver, the board's decision is clear, and this issue is clearly waived by the government. They do not defend in the briefs that the board treated Mr. Glissant as a refugee under Section 209A. Refugees apparently are not allowed, arguably are not allowed to adjust status. 209B applies to asylees who adjust status. And the regulation and our clear that these people, I think, can adjust status. Does footnote 1 of the second BIA opinion cure that by saying that with regard to the request for a 209C waiver, we note the fact that Respondent has a serious criminal history on paraphrasing and, therefore, he would not merit relief even in our discretion. Because that assumes away the legal error that you've been talking about. Yeah. As well, I think the case is Mamouzian, which talks about the conflation of the discretionary decision with the wrong legal standard. When you apply the wrong legal standard and then you go on to deny indiscretion, there's serious concerns that are raised. In addition to the other two, and we briefed that issue, in addition to the other two legal errors that we think there are in a summary without any mentioning of the equities or the legal standard for evaluating the waiver. Are there no further questions, Your Honor? Thank you. I think there are not. Thank you. We appreciate very much the arguments of both counsel. They've been very helpful. And since we took a little longer, I'm going to declare a short recess for about 5 or 10 minutes.
judges: Alarcon, Graber, Rawlinson